UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANNA MOLINA, as next fried of
JEREMIAS MOLINA, a minor child,  Case No. 07-10948

    Plaintiff,  Honorable Nancy G. Edmunds

v.

BOARD OF EDUCATION OF THE
SCHOOL DISTRICT FOR THE CITY OF
DETROIT (a/k/a DETROIT PUBLIC
SCHOOLS), ET AL.

    Defendants.
                                     /

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [12]**

This matter comes before the Court on Defendants' motion to dismiss, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Because Plaintiff cannot establish that her minor child's substantive due process rights were violated, Plaintiff's § 1983 claim is dismissed. Plaintiff's remaining claim, brought pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487, and the Rehabilitation Act, 29 U.S.C. §§ 790-794e, is likewise dismissed because Plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**I.    Facts**

On March 5, 2007, Plaintiff Joanna Molina ("Mother") as next friend of Jeremias Molina, a minor child ("Jeremias"), filed a complaint against Defendants Board of Education of the School District for the City of Detroit ("Detroit Public Schools"), Dorothy Riley

("Principal") in her official and individual capacity, and Petimat Taayeva ("Teacher") in her official and individual capacity. (Compl. ¶¶ 2-4.) Plaintiff's complaint alleges two alternative claims:[1] Count I alleges that Defendants violated Jeremias's Fourteenth Amendment substantive due process rights under the "state-created danger" doctrine. Count IV alleges that Defendants' failure to protect Jeremias at school from another special education student's assaults and/or harassment deprived him of access to public school resources and opportunities and thus violated the IDEA and the Rehabilitation Act.

Specifically, the complaint alleges the following. Jeremias was a special education student for the 2003/2004 academic school years at Higgins Elementary School, which is part of the Detroit Public Schools. (Compl. ¶ 10.) While a student at Higgins Elementary School, another special education student, J.B., repeatedly threatened Jeremias, including one threat to kill. J.B. also repeatedly beat Jeremias. Defendants had actual and longstanding knowledge that J.B. was a violent and dangerous person who was a threat to Jeremias and other special education students at Higgins Elementary. (Compl. ¶¶ 12-15.)

Throughout the 2003 and 2004 academic school years, Plaintiff repeatedly complained to Principal Riley and Teacher Taayeva that her son was being physically assaulted and psychologically harassed by J.B. on an almost daily basis, including the threat that J.B. had intended to "kill" her son. (Compl. ¶ 16.) Defendants made repeated promises to Plaintiff that they would protect her son from J.B. (Compl. ¶ 17.) As the

---

[1] On March 28, 2007, this Court dismissed Count II (gross negligence) and Count III (Michigan's Persons with Disabilities Civil Rights Act), declining to exercise supplemental jurisdiction over these state-law claims. (Docket Entry No. 3.)

2

psychological and physical assaults continued and increased in severity, Principal Riley, with the authority and approval of the Detroit Public Schools, told Plaintiff that J.B. would be suspended from school for one week and that, upon his return, J.B. would be placed in a classroom separate and apart from Jeremias's classroom so that the two boys would not come in close contact. (Compl. ¶ 18.) Despite this promise, Defendants made the affirmative decision to return J.B. to Jeremias's classroom after he returned from his suspension, thereby increasing the risk of injury to Jeremias. (Compl. ¶¶ 19, 26, 28, 30.) Subsequently, on March 10, 2004, J.B. struck and pushed Jeremias into an open locker at Higgins Elementary School after the two boys left the same classroom. (Compl. ¶ 20.) As a result, Jeremias's right eardrum was perforated. He also suffered loss of hearing, a closed head injury, and other damages. (Compl. ¶¶ 20, 47.) Following the assault, Plaintiff transferred her son to another elementary school within the Detroit Public Schools. (Compl. ¶ 21.) In August of 2005, Plaintiff and Jeremias moved to North Carolina. (Compl. ¶ 1.)

## II. Standard of Review

### 1. Rule 12(b)(1)

Rule 12(b)(1) allows the Court to dismiss a claim for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may be appropriate when a plaintiff has failed to exhaust administrative remedies that are a prerequisite to his suit. The motion may be treated as either a facial or a factual challenge to the Court's subject matter jurisdiction. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading.

In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under Rule 12(b)(6) motions to dismiss." *Id.*

### 2. Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b) (6) tests the sufficiency of a complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996). This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

As observed by the Sixth Circuit, the Supreme Court recently clarified what a plaintiff must plead to survive a Rule 12(b)(6) motion to dismiss. *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007)). Specifically, it rejected the standard announced in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

> The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 127 S. Ct.] at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the

4

> complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S. Ct. at 1969.

*Assoc. of Cleveland Fire Fighters*, 502 F.3d at 548. The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

## III. Analysis

### A. Application of Exhaustion Requirements and Statute of Limitations Under the IDEA to Plaintiff's § 1983 Claim

Defendants argue that, although Plaintiff brings a substantive due process claim under § 1983, it is in essence an IDEA claim because Plaintiff also brings an IDEA claim alleging that Defendants' failure to protect her son at school from J.B.'s assaults and/or harassment deprived him of access to school resources and opportunities. Defendants further argue that, because Plaintiff failed to exhaust the administrative remedies available under the IDEA within the two-year statute of limitations, 20 U.S.C. § 1415(f)(3)C), this § 1983 claim and Plaintiff's alternative IDEA claim are both time-barred and thus must be dismissed.

Plaintiff responds that her § 1983 claim is not a disguised IDEA claim because it is not based on a violation of the IDEA and does not seek to enforce a right to a "free appropriate public education" or any other remedy provided by the IDEA. Rather, Plaintiff asserts, her § 1983 claim is based on an alleged violation of Jeremias's substantive due process rights under the Fourteenth Amendment and seeks monetary damages for physical and

5

psychological harm that are unavailable under the IDEA. Thus, Plaintiff argues, because the § 1983 claim is independent of any rights arising from and does not seek any remedies available under the IDEA, it cannot be considered a "disguised" IDEA claim. Accordingly, there is no need to exhaust administrative remedies available under that statute or any need to file the § 1983 claim within the IDEA's two-year statute of limitations.

Plaintiff alternatively argues that, even if construed as an IDEA claim, any attempt to exhaust administrative remedies available under the IDEA would have been futile because, immediately after the March 10, 2004 incident with J.B., she transferred her son to a different school in the Detroit Public School system and subsequently, in August 2005, moved with him to North Carolina, thus rendering inadequate any remedy available under the IDEA. Because damages are the only suitable remedy, Plaintiff argues, there is no obligation to exhaust administrative remedies.

Recent decisions from the Sixth Circuit Court of Appeals and the United States District Court for the Southern District of Ohio support Plaintiff's arguments. In *Covington v. Knox County School System*, 205 F.3d 912 (6th Cir. 2000), the mother of a disabled student brought a § 1983 action alleging that her son's substantive due process rights were violated by his special education school and its officials. *Id.* at 913. The district court granted summary judgment for the defendants due to the mother's failure to exhaust her administrative remedies under the IDEA. The Sixth Circuit reversed because it agreed with the mother that "exhaustion is futile when . . . damages are the only suitable remedy for the plaintiff's alleged injuries and yet damages are unavailable through the administrative process." *Id.*

Although it agreed with those decisions requiring exhaustion "even when the plaintiff seeks money damages," the Sixth Circuit found that exhaustion would have been futile in *Covington* because the child had "already graduated from the special education school, his injuries [were] wholly in the past," and "money damages [were] the only remedy that [could] make him whole." *Id.* at 917. The *Covington* Court also distinguished the Sixth Circuit's decision in *Doe v. Smith*, 879 F.2d 1340 (6th Cir. 1989), where it "held that parents may not avoid the state administrative process through the unilateral act of removing their child from a public school." *Id.* at 918 (internal quotation marks and citation omitted). "*Doe v. Smith* is inapplicable to a case . . . where the administrative process would be incapable of imparting appropriate relief due to the nature of [the child]'s alleged injuries and the fact that he has already graduated from the special education school, not due to [his mother]'s unilateral act." *Id.* It thus held that "while a claim for money damages does not automatically create an exception to the exhaustion requirement of the IDEA, in this case exhaustion would be futile because money damages, which are unavailable through the administrative process, are the only remedy capable of redressing [the child]'s injuries." *Id. Accord, Jenkins v. Bd. of Educ.*, 463 F. Supp.2d 747 (S.D. Ohio 2006) (similarly holding that, because the student was no longer enrolled at the defendant school, "no administrative remedy could alleviate her alleged injuries.").

Under these facts, the Court observed, "where there is no administrative remedy for a wrong that the plaintiff has suffered, exhaustion is futile and may be waived." *Id.* (internal quotation marks and citations omitted). Based on its finding that exhaustion would be futile, the *Covington* Court found it unnecessary to express an opinion as to whether the § 1983 claims in the plaintiff's complaint fell "within the ambit of the IDEA." *Id.* at 916. Similar

to the students in *Covington* and *Jenkins*, Jeremias is no longer enrolled as a student in the Detroit Public School system. Because there is no administrative remedy under the IDEA for the alleged wrong he has suffered and the remedy Plaintiff seeks, exhaustion under the IDEA would be futile. Defendants' reliance on *Yaw v. Van Buren Intermediate School District*, No. 4:01-CV-60, 2001 U.S. Dist. LEXIS 12929 (W.D. Mich. Aug. 22, 2001), is misplaced. Unlike the facts presented here, the child at issue in *Yaw* was still in the defendant school district's special education program at the time the federal action was filed. More importantly, his case involved questions concerning an Individualized Education Program ("IEP") created for him by the defendant school district and thus had "a nexus to the IDEA." *Id.* at * 13.

In contrast, Plaintiff's § 1983 claim here is not based on a violation of the IDEA and does not seek to enforce rights created by the IDEA or remedies available under that Act. Accordingly, unlike *Yaw*, Plaintiff's § 1983 claim has no nexus to the IDEA. Thus, in addition to this Court's finding that exhaustion would be futile under the IDEA, it further concludes that the § 1983 claim falls outside the ambit of the IDEA. It is not, as Defendants' argue, a disguised IDEA claim. Accordingly, there is no need to discuss Defendants' argument that Plaintiff's § 1983 claim must satisfy the two-year statute of limitations established for IDEA claims. *See* 20 U.S.C. § 1415(f)(3)(C).

The allegations in Plaintiff's alternative IDEA claim support the Court's conclusions. Accepting her allegations as true, Plaintiff states no claim for relief under the IDEA. Rather, it is alleged that Defendants, acting under the color of state law deprived Jeremias of his clearly established rights under federal law and entitle Plaintiff to relief provided under § 1983. (Compl. ¶ 46-47.) Because Plaintiff has failed to state a claim for relief under the

IDEA in Count IV of her Complaint, her IDEA claim is dismissed pursuant to Rule 12(b)(6).[2]

### B. Plaintiff's Substantive Due Process Claim

The Court now considers Defendants' argument that Plaintiff cannot state a substantive due process claim under the state-created danger doctrine.

Plaintiff acknowledges the Supreme Court's holding in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 197 (1989), that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Plaintiff also clarifies that she is not alleging that a "special relationship" exception to *DeShaney* applies to the facts of this case simply because her son was a special education student attending classes at a Detroit Public School when he was injured by a fellow student. *See Doe v. Claiborne County Bd. of Educ.*, 103 F.3d 495, 510 (6th Cir. 1996); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir. 1995). Rather, Plaintiff argues that the facts of this case give rise to the "state-created danger" exception to the rule announced in *DeShaney.* Specifically, Plaintiff alleges that Defendants' affirmative act of returning J.B. to Jeremias's classroom, after his one-week suspension and Defendants' promises to the contrary, increased the risk that J.B. would harm Jeremias.[3] Accordingly, Plaintiff seeks to hold Defendants responsible, under § 1983,

---

[2] Even if Plaintiff had stated a claim for relief under the IDEA, that claim would be subject to dismissal in light of Plaintiff's failure to file it within the IDEA's two-year statute of limitations. *See* 20 U.S.C. § 1415(f)(3)(C).

[3] To the extent Plaintiff's claim is based on Defendants' alleged failure to protect, the Sixth Circuit has observed that a "failure to act is not an affirmative act under the state-created-danger theory." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

for the harm Jeremias suffered as a result of the private act of violence by a fellow classmate.

The Court finds Plaintiff's arguments unpersuasive. Plaintiff has not and cannot allege facts that fit the state-created-danger exception to *DeShaney*.

"Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk than an individual will be exposed to private acts of violence." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 464 (6th Cir. 2006) (internal quotation marks and citation omitted). To show a state-created danger, the Sixth Circuit requires Plaintiff to show:

> 1) an affirmative act by the state which either created or increased the risk that the plaintiff [was] exposed to . . . ;
> 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and
> 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright v. City of Marine City*, 336 F.3d 487, 491 (6th Cir. 2003).

Notwithstanding Plaintiff's attempts to color the facts differently, Defendants cannot reasonably be said to have taken affirmative steps that caused Jeremias's injuries. The facts of this case are most similar to those where "the state officials performed some act, but [the Sixth Circuit] held that there was no affirmative act that created or increased the risk because the victim would have been in about the same . . . danger even if the state officials had done nothing." *McQueen*, 433 F.3d at 466. For example, in *Bukowski v. City of Akron*, 326 F.3d 702 (6th Cir. 2003), "the police picked up the mentally-disabled plaintiff from a third-party's home and returned her there" where she "was subsequently raped by the third party." *McQueen*, 433 F.3d at 466. The Sixth Circuit "rejected the plaintiff's

10

argument that the police had committed an affirmative act under the state-created-danger theory, because the police had merely returned the plaintiff to a preexisting danger." *Id.* (citing *Bukowski*, 326 F.3d at 709). "In other words, if the police had done nothing, the plaintiff would have faced just as much danger as she in fact faced after the officers' actions." *Id.* "The question is . . . whether [the victim] was safer *before* state action than [he] was *after* it." *Cartwright*, 336 F.3d at 493.

Defendants' alleged conduct here is similar to that at issue in *Bukowski*. The danger to Jeremias was created by J.B.'s presence in their shared classroom and by J.B.'s close proximity to him during each school day at Higgins Elementary School. When J.B. was returned to Jeremias's classroom after his suspension, Defendants merely subjected him to a preexisting danger. If Defendants had not promised Plaintiff that they would put J.B. in a separate classroom, Jeremias would have faced just as much danger as he in fact faced after Defendants' alleged affirmative acts. This is not enough to state a claim for relief under the state-created-danger exception to *DeShaney*. Plaintiff has not and cannot allege that Jeremias was safer before Defendants' alleged affirmative acts than he was after.

Because there is no underlying unconstitutional conduct, there can be no direct, supervisory, or municipal liability under § 1983. *See McQueen*, 433 F.3d at 470-71. Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 claim is granted.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss is GRANTED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: December 14, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 14, 2007, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager